Case 5:18-cr-00131-FB   Document 123   Filed 05/07/21   Page 1 of 12

FILED
May 07, 2021
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: ___Jaemie Herndon___
DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CRIMINAL NO. SA-18-CR-0131-FB |
| | ) |
| RAYMOND MCKINNEY, | ) |
| | ) |
| Defendant. | ) |

## **O R D E R**

This matter having come before the Court on the Defendant's Motion to Suppress and the Court having received the Government's Response in Opposition thereto, and the Court having heard and witnessed the testimony, evidence and arguments in Court, and the Court being otherwise fully advised in the premises.

### **ISSUE PRESENTED**

Whether the evidence seized from Defendant McKinney (hereinafter "McKinney) should be suppressed based on alleged violations of his *Fourth Amendment* rights. Specifically, whether the officers: 1) had reasonable suspicion to stop McKinney; and 2) had "individualized, reasonable suspicion" that McKinney was armed and presently dangerous.

### **EVIDENCE PRESENTED**

The Defendant's submitted exhibits and the Government's submitted exhibits, along with the testimony at the evidentiary hearing, were considered by the court and are hereby admitted as evidence.

**Defendant:** In his motion to suppress (Document 20), the defendant attached the following exhibits:

1. A Disc containing the recordings of the officers' body cameras of some of the events that transpired leading to the Defendant's arrest (referenced as "Body camera/cam"); and

2. SAPD Report 2017-1025135 prepared by Officer Eddie Holland.

**Defendant:** In the evidentiary hearing, the defendant provided the following exhibit:

1. Print out of the weather on September 19, 2021

**Government:** In the Government's Response to the Motion to Suppress (Document 22), the Government attached the following exhibits:

1. Snapshot of September 17, 2017 of the headlines in the Express News ;
2. Snapshot of September 19, 2017 of the headlines in the Express News;
3. Photo of the officers' route of travel on N. New Braunfels to Hays;
4. Photo of SAPD Form #168 – case number and location of evidence;
5. Google map Photo of the front of the house with the electric box;
6. Still photo from body camera of the interior of the electric box;
7. Weapon seized;
8. Bullet from chamber and clip in the weapon;
9. Still photo from body camera of the drug paraphernalia in McKinney's backpack; and
10. Still photo from body camera of the crowd in the intersection of New Braunfels and Hays.

**Government:** In the evidentiary hearing, the Government provided the following exhibits:

1. Government's exhibits 1 – 10 (as listed above)

2. Body camera video footage of SAPD Joe Carmona's Body Camera (referenced as exhibit 11 during the evidentiary hearing)

3. Body camera video footage of SAPD Eddie Holland's Body Camera (referenced as exhibit 12 during the evidentiary hearing)

## FACTS

On September 19, 2017, as reflected in Defendant's Exhibit 2, Government's Exhibit 4, and the testimony of SAPD Unit Crime Officers Eddie Holland and Joe Carmona, SAPD Street Crime Unit Officers were instructed at their daily roll call to patrol the area of Hays St. and New Braunfels due to numerous gang related shootings. The Court considered Government's Exhibits 1 and 2 that depict the Express News headlines for September 17, 2017 and Tuesday, September 19, 2017 of the violence in this area where McKinney was arrested. The Court also considered testimony from Officer Holland, that in his 22 years' experience as a SAPD officer, Hays Market and the area surrounding, are known for drug trafficking and violent crime. SAPD Officers Holland and Carmona testified that numerous gang members, including those affiliated with the Bloods gang, congregate at the Hays Street Market located at the cross section of Hays St. and New Braunfels. Officers Holland and Carmona are very familiar with the area, and Officer Holland has made numerous drug trafficking and violent crime related arrests in that area. Both officers also testified that they are specifically trained in drug recognition and gang affiliation identification, due to their involvement on SAPD's Street Crime Unit.

Officer Holland testified that on September 17, 2019, he and Officer Carmona observed a group of individuals on the corner of New Braunfels and Hays, near a food mart and that this area is a known as a Bloods gang location. The officers further observed that several of the individuals were dressed in red. Both officers testified that red is indicia of gang affiliation with

the Bloods, and that many Bloods members will wear red clothing to signify their association. Officer Carmona also testified that McKinney was wearing a jacket, backpack with a floppy hat, which seemed unusual for September in Texas, due to the hot weather. Officer Carmona testified, that in his training and experience, baggy clothing can be used to conceal weapons or narcotics. He also noted that none of the other individuals wore a jacket or backpack.

In addition to some of the group's clothing, Officers Carmona and Holland testified that they witnessed someone drop a small bundle. In review of the Disc containing the recordings of the body cam, both Officers are seen looking for the bundle in the group's immediate area with their flashlights after everyone has been frisked. Both officers testified that the area is a known drug trafficking area and that people are known to discard drugs in the area.

The Officers testified that they then made contact with the group due to the officers' knowledge that this area was the hangout for Bloods street gang, the recent shootings, the crime area, and the witnessing of someone dropping, what they believed to be, narcotics.

In review of the Disc containing the recordings of the body cam, the female in the group appears to try and distance herself from the group. Officer Holland testified that he had to instruct her to return to the group. The officers made contact with the group and frisked the males due to the officers' knowledge that this area was the hangout for the Bloods street gang, the recent shootings, the crime area, witnessing someone drop a small bundle, which they believed to be narcotics, the unusual baggy clothing of McKinney, the red clothing of some of the individuals, and the fact that it was dark and there were four civilians and only two officers and officer safety was an issue.

However, the male in the jacket (McKinney) stated he would not consent to a search of his person.  Officer Carmona proceeded to frisk the individual and found a pistol on McKinney's

left hip.  The pistol was identified as a Bersa, Model:  Thunder 380, .380 caliber semi-automatic pistol, Serial number 835150 which had been reported stolen in a burglary of habitation.

The Court further finds that the male with the weapon refused to identify himself; however, the officers arrested him and learned his identity to be Raymond McKinney.  The Court further finds that the officers learned that McKinney had previously been convicted of a felony and was active on a Protective order dated 12/14/2016.

## AUTHORITIES

**Reasonable Suspicion**

The *Fourth* Amendment protects against illegal searches and seizures.  *U.S. Const. amend. IV*.  Courts analyze the legality of stops for *Fourth Amendment* purposes under the standard articulated by the Supreme Court in *Terry v. Ohio*.  *U.S. v.  Spears*, 636 Fed. Appx 893; 2016 U.S. App. LEXIS 1032 (2016) *citing Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868 (1968).  Analysis of "stop and frisk" cases start with the Supreme Court's decision in *Terry*.  The Supreme Court held in *Terry* that effective crime prevention and detection may in appropriate circumstances require that officers be allowed to "seize" or stop individuals briefly on the street and in public even where no probable cause exists to arrest them.  *Id*.  However, not all encounters between police and citizens involve a "seizure" of persons.  A "seizure" has occurred when an officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen.  *Id*.  The question raised by McKinney is whether at the point of seizure, the SAPD officers had reasonable suspicion to make such a stop and pat him down.

"Reasonable suspicion exists when the detaining officer can point to specific and articulable facts that, when taken together with rational inferences from those facts, reasonably warrant the . . .seizure."  *United States v. Spears*, 636 Fed. Appx. 893, 2016 U.S. App. LEXIS

1032(2016) *citing United States v. Macias*, 658 F.3d 509, 517 (5th Cir. 2011). "Although an officers' reliance on a mere hunch is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and if falls considerably short of satisfying a preponderance of the evidence standard." *United States v. Pack*, 612 F.3d 341, 347 (5th Cir., 2010), *modified on other grounds,* 622 F.3d 383 (5th Cir. 2010). The reasonable suspicion analysis "is necessarily fact-specific, and factors which by themselves may appear innocent, may in the aggregate rise to the level of reasonable suspicion." *United States v. Spears*, 636 Fed. Appx. 893, 2016 U.S. App. LEXIS 1032 (2016) *citing United States v. Ibarra-Sanchez*, 133 F.3d 753, 759 (5th Cir. 1999). Each factor must not be treated in isolation but instead the totality of the circumstances and the collective knowledge and experience of the officer. *United States v. Macias*, 658 F.3d 509, 517 (5th Cir. 2011). Under the collective knowledge doctrine, reasonable suspicion "can vest through the collective knowledge of the officers involved in the search and seizure operation." *United States v. Powell*, 732 F.3d 361, 369 (5th Cir. 2013).

In applying *Terry*, the evidence reveals that the officers had reasonable suspicion to stop McKinney. This Court heard testimony that Officers Holland and Carmona are seasoned officers based on their work on the SAPD Street Crimes Unit, and that they have training and experience in drug and gang affiliation recognition. Officer Holland has been a SAPD for over 22 years. In fact, Officer Holland has made numerous arrests for violent crimes and narcotics stops at the Hays Street Market, and the surrounding area.

This Court heard testimony that the officers observed between 5-7 individuals hanging around an area that had previously been riddled with gang violence. The Officers were particularly instructed to patrol that area due to recent shootings and the need to prevent further

shootings at the Hays Market (as supported in Government's exhibits 1 and 2). Four of these individuals traveled down Hays Street and the police officers followed them in the patrol car. Officer Holland and Officer Carmona observed one of the individuals drop something very small. Officer Holland was in the passenger side of the patrol vehicle and observed a quick hand motion indicative of someone getting rid of evidence, usually narcotics. Of the four individuals, only McKinney was wearing a jacket and had a backpack on the hot September night. As the patrol car stops and the officers exit the vehicle, the only female in the group continues to walk away until called back by the officers. This action adds to their suspicion since she tried to distance herself from the group. The woman wore a big red sparkly bow, more evidence of the red gang color. These observations formed a reasonable suspicion which caused the officers to further investigate.

The defense argues that the female was wearing a pink bow. The Court finds that the body camera **does** show that the area was very dark and these four individuals were together. Notably, the defendant was wearing red shorts, more evidence of the red gang color. Officer Holland also testified that he believed the bow to be red prior to making contact with the group.

The time at which the encounter takes place, the characteristics of the location where the encounter occurs, and the likelihood of danger in a particular context are important elements in assessing the totality of the circumstances. See *Illinois v. Wardlow*, 528 U.S. 119, 120 S.Ct. 673, 676 (2000). The body camera distinctly reveals the area was dark. There was also four individuals and only two patrol officers, and Officer Carmona testified that there was an issue for officer safety.

In evaluating whether reasonable suspicion exists, "[c]ourts must allow law enforcement officers to draw on their own experience and specialized training to make inferences from and

deductions about the cumulative information available to them that "might well elude an untrained person." *United States v. Estrada*, 459 F.3d 627, 633 (5th Cir. 2006) citing *United States v. Arvizu*, 534 U.S. 266, 274, 122 S. Ct. 744 (2002).  Reasonable suspicion must be supported by particular and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant an intrusion upon an individual's freedom.  *United States v. Michelletti*, 13 F.3d 838, 840 (5th Cir. 1994) (*en banc*).  However, the "reasonableness of official suspicion must be measured by what the officers knew before they conducted their search." *Florida v. J.L.*, 529 U.S. 266, 120 S. Ct. 1375, 1379 (2000).  If the SAPD officers had personally observed suspicious activity by McKinney and his group, the *Fourth Amendment* requirement of reasonableness would be satisfied if there was a minimal level of objective justification for the officer's actions, measured in the light of the totality of the circumstances.  *United States v. Rideau*, 969 F.2d 1572, 1574 (5th Cir. 1992) (*en banc*) citing *United States v. Sokolow*, 490 U.S. 1, 6-8, 109 S.Ct. 1581 (1989).

In evaluating the reasonableness of an officer's action in light of the totality of the circumstances, the Court must remember to examine the situation from the perspective of the officer and the information available to the officer at the time the decision was made to stop a person.  *United States v. Silva*, 957 F.2d 157, 160 (5th Cir. 1992).  As long as all the facts and circumstances, viewed objectively, support the officer's decisions, the Fourth Amendment is satisfied.  *Rideau*, 969 F.2d at 1574.

The officers observed one of the individuals drop something small on the ground.  The body cam will also show the officers trying to find the something they saw discarded.[1]  They flashed their flashlights to the ground and searched the ground.  Also, the officers were aware of

---

[1] See Gov. Ex. 5, a Google map of front of the house with electric box.  See Govt. Ex. 6, body cam video showing officers looking inside electric box.

recent gang violence[2] and had reasonable suspicion of criminal activity when all the factors are seen as a whole. The court heard testimony that the officers involved in this investigation are trained officers. The information of the prior shooting the officers had before they saw McKinney and the other three individuals before the stop, was sufficient for the pat down. Along with the observations made by Officers Holland and Carmona of someone dropping something and the woman trying to distance herself, all these taken together are enough to rise to reasonable suspicion.

**Individualized Reasonable Suspicion**

Next, the defense argued that Officer Carmona lacked "individualized, reasonable suspicion" that Mr. McKinney was "armed and presently dangerous". *See* docket no. 20, pg. 6. The defense portrays McKinney as just innocently holding a cell phone in one hand and a Minute Maid apple juice bottle in the other. *Id.* at pg. 2. Defense argues that McKinney did not pose any danger. Only law-abiding citizens with concealed permits may carry guns. Therefore, if a suspected gang member wearing gang colors was in possession of loaded firearm[3], there was a reasonable belief that he posed a danger.[4] The fact that McKinney was the only one of the four wearing a jacket with a backpack on, lends itself to reasonably suspect that he may be concealing contraband or a weapon. The fact that he was argumentative when the police approached, while the other individuals complied, lends itself to reasonably suspect he had something to hide.

Factors that ordinarily constitute innocent behavior may provide a composite picture sufficient to raise reasonable suspicion in the minds of experienced officers. *United States v. Ramirez*, 839 F.3d 437 (5th Cir. 2016) quoting *United States v. Zapata-Ibarra*, 212 F.3d 877, 881

---

[2] As a result of gang violence in the last 24 hours, the officers were closely patrolling this particular are See the headlines in Govt. Exhibits 1 and 2. As recent as 4 a.m. on this particular day, Sept. 19, 2017, there was a shooting.
[3] See attached Government Exhibits 7 and 8 found on McKinney, picture of the gun and round in chamber.
[4] Govt. Ex. 9, shows the drug paraphernalia found in McKinney's backpack.

9

(5th Cir. 2000). Furthermore, a reasonable suspicion determination can be based on commonsense judgments and inferences about human behavior. *United States v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690 (1981). Thus in light of an officer's experience, an officer is permitted to draw limited inferences of criminal activity from behavior that is not facially criminal in determining if sufficient reasonable suspicion exists. *Texas v. Brown*, 460 U.S. 730, 742-43, 103 S. Ct. 1535 (1983); *United States v. Blount*, 123 F.3d 831, 836 (5th Cir. 1997).

The evidence in this case shows that there was plenty of individual exhibited behaviors by McKinney to rise to the level of reasonable suspicion. First, McKinney was the only one in the group wearing a jacket, backpack and hat on a hot night.[5] The defense even alluded to the misstep of the officers by not stopping the other two individuals walking by in the street. *See* docket no. 20, pg. 3. The body cam shows that those individuals were wearing shorts, capris and tank tops. Secondly, McKinney was the only one that did not comply with the pat down. The other three individuals did not complain and argue. Thirdly, McKinney was wearing red shorts, a gang color of that area.

Lastly, the police had to protect themselves. According to the defense's motion and timestamps of the body cam, "Officer Carmona approached McKinney at 2:55:40." *See* docket no. 20, pg. 2. Again according to defense timestamp of body cam, "Upon frisking Mr. McKinney, Officer Carmona discovered a gun in Mr. McKinney's waistband at 2:55:58". *See* docket no. 20, pg. 3. The difference between the time Officer Carmona approaching McKinney and discovery the weapon is a short 18 seconds.

The Fifth Circuit has recognized that "when someone engages in suspicious activity in a high crime area, where weapons and violence abound, police officers must be particularly

---

[5] Officer Carmona's body cam at 3:18:48, showed that the neighbor that came out from the house that this stop was made was only wearing shorts and did not appear to be chilled. It was a hot, humid night.

cautious in approaching and questioning him." *United States v. Miranda*, 393 Fed. Appx. 243 (5th Cir. 2010) quoting *United Sates v. Rideau*, 969 F.2d 1572, 1575 (5th Cir. 1992) (*en banc*). "When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer," he has the "authority to [conduct] a reasonable search for weapons for the protection of the police officer. . . [if] a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *United States v. Miranda*, 393 Fed. Appx. 243 (5th Cir. 2010) quoting *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868 (1968). The officers had to protect themselves and had to conduct a frisk. The area was very dark and there was four in the group and only two officers at the initial stop. As the officers stated on the body camera and testified, officers are trained to keep everyone safe.

"The *Fourth Amendment* is not, of course, a guarantee against *all* searches and seizures, but only against unreasonable searches and seizures." *United States v. Pack*, 612 F.3d 341, 347 (5th Cir., 2010), *modified on other grounds,* 622 F.3d 383 (5th Cir. 2010) *citing United States v. Sharpe*, 470 U.S. 675, 105 S.Ct 1568 (1985). McKinney does not argue that he did not have a gun on his person after telling the officer he did not. McKinney only argued that the officers had no reasonable suspicion to stop McKinney. McKinney was the only one in the group that contested the pat down and in approximately 18 seconds, a gun was found on his person.

Therefore Defense counsel's assertion of any *Fourth Amendment* violation fails.

IT IS HEREBY ORDERED that the Defendant's Motion to Suppress be in all things DENIED.

IT IS SO ORDERED.

SIGNED and ENTERED this  7th  day of  May  2021, San Antonio, Texas.

```
_____
FRED BIERY
UNITED STATES DISTRICT JUDGE
```